IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| In re: <br><br> C.W. MINING COMPANY, <br><br>       Debtor. | Bankruptcy No. 08-20105 <br> (Chapter 7) |
| COP COAL DEVELOPMENT COMPANY, <br><br>     Appellant and Cross-Appellee, <br><br>         v. <br><br> KENNETH A. RUSHTON, Trustee, <br><br>     Appellee and Cross-Appellant. | MEMORANDUM DECISION AND <br> ORDER ON COMBINED APPEAL <br><br><br> Case No. 2:10-CV-39 TS |

This matter is before the Court on the cross-appeals of COP Coal Development Company ("COP") and Trustee Kenneth A. Rushton (the "Trustee").[1]  The parties appeal from orders of the United States Bankruptcy Court for the District of Utah, entered in case number 08-20105 and adversary proceeding 09-02248.  Due to the similarity of facts and issues involved, five separate appeals to this Court by these parties were consolidated into this action.[2]  Having reviewed the

---

[1]*See* Docket Nos. 2, 3.

[2]*See* Case Nos. 2:10-CV-76; 2:10-CV-82; 2:10-CV-44; and 2:10-CV-1217.

briefs and evidences submitted by the parties, the Court is prepared to rule on the parties'
appeals.

## I.  BACKGROUND

This appeal arises out of the involuntary bankruptcy proceedings of C.W. Mining
Company ("CWM").  On January 8, 2008, an involuntary Chapter 11 bankruptcy petition was
filed against CWM in the Bankruptcy Court for the District of Utah.  An order for relief was
entered on September 26, 2008.  On November 13, 2008, CWM's Chapter 11 bankruptcy
proceeding was converted to a Chapter 7 liquidation proceeding.  On November 19, 2008, the
Trustee was appointed.

A.  COAL MINING AGREEMENT

Prior to entering bankruptcy, CWM was in the business of mining coal.  CWM's primary
asset was the Bear Canyon mine, an underground coal mine located in Emery County, Utah.  The
Bear Canyon mine is located on property owned by COP.  In March of 1997, COP and CWM
entered into a coal mining agreement (the "Agreement"), pursuant to which COP granted CWM
the right to mine the Bear Canyon mine.  Under the Agreement, CWM was to pay COP a royalty
"equal to the lesser of 8% or the maximum royalty allowed by law of the average gross
realization on every ton (2000 lbs.) of coal mined and removed from the described premises."[3]

CWM and COP executed two amendments to the Agreement.  The first amendment
reduced the royalty payable from 8% to 4% (the "4% Amendment").  The second amendment to
the Agreement (the "Deferral Amendment") defers payment of a portion of the royalties CWM

---

[3]Docket No. 17 Ex. 26, at 1744.

owed COP.  The Deferral Amendment provides that "the parties agree to use Exhibit 1 to amend paragraph 2 of the [Agreement], which amendment shall be null and void after [CWM]'s production exceeds an annual level of 2,000,000 tons, or the first day [CWM] mines using the longwall mining method."[4]

According to COP, the 4% Amendment and the Deferral Amendment were drafted contemporaneously.  COP alleges that the 4% Amendment was proposed by CWM in June 2000, to reduce the royalties owed, thereby allowing CWM to use those funds to convert the mine to a more profitable method of mining—longwall mining.  Allegedly, the Deferral Amendment was then drafted by COP as a counter-proposal to grant CWM the royalty reduction only as a deferment, with the amounts deferred becoming due after the longwall mining system was in place or certain production quotas were met.  Based on this interpretation of the amendments, COP asserts it is owed deferred royalties from the 2000 to 2007 time period.

The 4% Amendment is a computer-generated, right-hand-justified document.  Copies of the 4% Amendment were found in the possession of COP and other third-party entities, including the registries of governmental entities involved in the mining process.  In addition, COP provided a modified version of the 4% Amendment containing the words "Exhibit 1" in handwritten lettering across the top of the document.  This modified version of the 4% Amendment was not found in possession of any of the third-party or governmental entities.

The Deferral Agreement was typewritten on beige legal-size paper, and the upper lefthand corner thereof was mutilated and torn off, apparently by removal of staples.  The original

---

[4]*Id.*

3

Deferral Amendment was not available in the files of CWM or COP; rather, it was found in the files of a related entity, Standard Industries, Inc.  The same third-parties and governmental entities that possessed a copy of the 4% Amendment did not possess a copy of the Deferral Agreement.

Ultimately, the bankruptcy court found that the 4% Amendment was entered into in June 2000 and the Deferral Amendment in early 2007.  The bankruptcy court further found that the words "Exhibit 1" were added to the 4% Amendment at the time the Deferral Amendment was executed.  In support of these findings, the bankruptcy court relied on the incompatibility of the two amendments as an integrated document, the lack of support for COP's interpretation of the Deferral Amendment in the accounting records and filings with governmental entities, and the September 2008 deposition testimony of the President of COP, Joseph Kingston.

Mr. Kingston was a signatory to the Agreement and the amendments.  Mr. Kingston testified during his 2008 deposition that CWM stopped making monthly payments to COP in 2007 because "[w]e made an adjustment to our agreement to allow for them to, to hold off some of the payment until after they had installed their longwall."[5]  Mr. Kingston also testified at that time that he believed the 2007 agreement to defer payment "was in writing"[6] and allowed for a deferred payment of 50%.[7]  During the underlying trial, Mr. Kingston testified that he executed the Deferral Amendment in 2000, at the same time he executed the 4% Amendment.  The

---

[5]*Id*. Ex. 21, at 1492–93.

[6]*Id*. at 1493.

[7]*Id*. at 1496.

bankruptcy court found Mr. Kingston's trial testimony lacked credibility due both to his prior

testimony and his demeanor on the witness stand.

The longwall mining system became operational at the Bear Canyon mine on October 31,

2007.  The bankruptcy court found that after implementation of the longwall mining system, "the

terms of the Deferral Amendment were satisfied and the royalty rates returned to the original

rates articulated in the [Agreement] of 8% on fee coal and 4% on federal coal."[8]

B.    CURE CLAIM

The Trustee had limited time from the order of relief to assume the Agreement on behalf

of the estate or it would be deemed rejected.[9]  Prior to assuming the Agreement, the Trustee was

required to first cure any existing defaults.[10]  CWM's estate had no funds with which to cure

defaults, therefore, the Agreement was only valuable to the estate to the extent it could be sold.

To determine whether an assumption and sale of the Agreement would be economical and

beneficial to the estate, the Trustee was therefore required to determine the costs to cure any

defaults under the Agreement.

To aid in identifying any outstanding defaults under the Agreement, the Trustee moved

the bankruptcy court to enter its Order Establishing Bar Date and Documentation Requirements

for Cure Claims Relating to Executory Contracts and Unexpired Leases (the "Cure Claim

Order").  Pursuant to the Cure Claim Order, May 5, 2009, was "established as the bar date for the

---

[8]*Id*. Ex. 26, at 1756.

[9]*See* 11 U.S.C. § 365(d)(4)(A).

[10]*See* 11 U.S.C. § 365(b).

filing of proof of all claims and arrearage against [CWM] arising under any executory contract or unexpired lease to which [CWM] was a party as of January 8, 2008."[11]  The Cure Claim Order instructed that all cure claims must set forth "each component of the calculation of the claim amount, explaining how such component was calculated and the specific contractual basis for it, supplying in detail all data relied upon to support the claim, and attaching all documentation supporting each component of the claim amount."[12]  It was further ordered "that cure claims shall be barred and disallowed if they are not filed in accordance with the foregoing requirements of this order on or before the bar date of May 5, 2009."[13]

On May 5, 2009, COP submitted its Proof of Cure Claim for the Agreement (the "Cure Claim") to the bankruptcy court in the total amount of $10,982,993.86.  COP included with its Cure Claim various documents, including: copies of the Agreement and relevant amendments; reports of tonnage and sales; invoices; and summary calculations of amounts allegedly owed.[14]

The Trustee objected to the Cure Claim.  The Trustee did not dispute that an outstanding debt was owed COP under the Agreement; rather, the Trustee objected to the amount of the Cure Claim.  The Trustee's expert witness summarized that "[o]ur recalculation totals to a proposed

---

[11]*See* Bankruptcy Case No. 08-20105, Docket No. 570, at 1–2.

[12]*Id*. at 2.

[13]*Id*.

[14]*See* Docket No. 17 Exs. 3–6.

claim amount of $669,394.43."[15]  The cure amount was reduced in part due to the Trustee's

assertion that the Deferral Amendment was a recent fabrication and, therefore, fraudulent.

The bankruptcy court set the Cure Claim for a three-day trial to begin on September 15,

2009.  In preparation for trial, COP hired an expert witness, L. Scott Kimber, "to determine the

amount owing by [CWM] to COP for . . . [u]npaid royalties[,] . . [d]eferred royalties[,] . . [and]

[u]npaid signing bonus . . . including applicable interest."[16]  In its findings of fact on the

Trustee's objection, the bankruptcy court found that COP provided Mr. Kimber "numerous

documents that have been requested by the Trustee but not produced in discovery."[17]  More

specifically, the bankruptcy court found that: "[i]t is evident from the expert report of Scott

Kimber that COP relied upon an accounts receivable ledger and monthly invoices from June

2000 through December 2006 to support its Cure Claim and that COP failed to attach those

documents to its Cure Claim."[18]

## C.    MOTION IN LIMINE

On the eve of the originally scheduled trial in this matter, COP's prior counsel was

hospitalized, becoming permanently unavailable.  As a result, the underlying trial was

rescheduled for October 26, 2009.  During the interim, COP obtained new counsel to pursue its

Cure Claim.

---

[15]*Id*. Ex. 9, at 298.

[16]*Id*. Ex. 75, at 2481.

[17]*Id*. Ex. 26, at 1752.

[18]*Id*. at 1753.

Prior to the originally scheduled trial date, the Trustee filed a motion in limine alleging that COP failed to fulfill its discovery obligations and deliberately and egregiously withheld documents requested by the Trustee.[19]   The Trustee sought exclusion of the following evidence: (1) the original and any copy of the Deferral Amendment; (2) the expert report of Mr. Kimber; and (3) the expert report of Albert H. Lyter III.  In addition, the Trustee requested that the bankruptcy court impose the following sanctions, among others, on COP: (1) an order declaring the Deferral Amendment to be a fraud; and (2) disallowance of the Cure Claim.

At a hearing on October 26, 2009, the bankruptcy court granted, in part, the Trustee's motion in limine.  Specifically, the bankruptcy court precluded the testimony of Dr. Lyter and the use of Dr. Lyter's expert report at trial.  The bankruptcy court also imposed substantial monetary sanctions against COP.  In speaking of COP's discovery violations, the bankruptcy court admonished that

> no ruling that the Court makes should be interpreted that somehow COP's behavior in this case, or Counsel's—prior Counsel's behavior in this case, or the attitude that's been taken toward this proceeding itself, there shouldn't be any, any implication that the Creditor or Counsel should take away from this that this kind of behavior is something that the Court would ever condone.[20]

In spite of this strong language, the bankruptcy court did not exclude Mr. Kimber's report because it appeared that Mr. Kimber's report could be of some assistance and, "under the circumstances, [the bankruptcy court] want[ed] to try and figure out . . . the amount of th[e] claim

---

[19]*See id.* Ex. 12.

[20]*Id.* Ex. 20, at 1059.

. . . ."[21]  Lastly, to the extent the Trustee sought as a sanction the striking of the Cure Claim, the bankruptcy court summarily denied such relief.

D.    ATTORNEY FEES

On November 30, 2009, the bankruptcy court entered an order on the Trustee's motion in limine and awarded the Trustee its attorney fees for bringing the motion.  Additionally, on December 10, 2009, the bankruptcy court entered its Order and Judgment on Trustee's Objection to COP's Proof of Claim.  As part of that order, the bankruptcy court awarded, as "a sanction for failing to provide discovery timely and in good faith," all the Trustee's attorney fees and expenses "associated with the objection, discovery, and trial."[22]  The bankruptcy court indicated that the amount of attorney fees and expenses would be determined by separate order.

On April 4, 2010, the Trustee filed his sanction request seeking $107,572 in attorney fees and $1,118.30 in expenses.  The Trustee also requested accounting fees of $50,766, for a total sanctions request of $159,456.30.  Shortly thereafter, the bankruptcy judge on the case, Judge Bouldin, recused and the case was assigned to Judge Mosier.  On May 24, 2010, COP filed an objection to the Trustee's sanction request.  On October 26, 2010, the bankruptcy court issued a memorandum opinion regarding sanctions and awarded the Trustee $12,558.50 in attorney fees and expenses it determined were caused by COP's discovery violations.

---

[21]*Id*. at 1062.

[22]*Id*. Ex 34, at 1789.

## II.  JURISDICTION

This Court has jurisdiction over the instant appeal under 28 U.S.C. § 158(a) and Rule 8002(a) of the Federal Rules of Bankruptcy Procedure.

## III.  STANDARD OF REVIEW

"Questions of law are reviewed de novo, questions of fact are reviewed for clear error, and matters of discretion are reviewed for abuse of discretion."[23]

## IV.  DISCUSSION

The parties raise the following issues on appeal: (1) did the bankruptcy court err in excluding Dr. Lyter and his expert report; (2) did the bankruptcy court err in finding that the Deferral Amendment was not entered into until February 2007; (3) did the bankruptcy court err in ruling that COP was not entitled to prejudgment interest; (4) did the bankruptcy court err in allowing COP's Cure Claim despite COP's failure to comply with the Cure Claim Order; (5) should Scott Kimber's expert report have been excluded; and (6) did the bankruptcy court improperly reduce the amount of attorney fees and costs awarded to the Trustee.

## A.    DR. LYTER

COP argues that the bankruptcy court erred in excluding the testimony of Dr. Lyter and the Lyter report from trial because: (1) the bankruptcy court's ruling ignores the mandates of Fed. R. Civ. P. 37; and (2) COP participated in the discovery process in good faith and all relevant evidence was disclosed in a timely manner.

---

[23]*Turner v. Turner (In re Turner)*, 266 B.R. 491, 493 (BAP 10th Cir. 2001) (citing *Pierce v. Underwood*, 487 U.S. 552, 558 (1988)).

1.     RULE 37

COP asserts that the bankruptcy court failed to abide by the requirements of Rule 37 because it ordered sanctions even though the Trustee did not seek to confer in good faith regarding the excluded material or file a motion to compel.  The Trustee contends that such steps were not required to obtain exclusion as a sanction.

To obtain sanctions under Rule 37(b) or (d), a party must first seek to confer in good faith with the opposing party and file a motion to compel.[24]  That being said, the Rule 37 provision applicable to this case is Rule 37(c)(1).  The sanctions available under Rule 37(c)(1) are often described as "self executing" and "automatic."[25]  As such, "[t]here is no requirement to confer with opposing counsel before filing a motion to exclude evidence under Rule 37(c)."[26]

Under the clear language of Rule 37(c)(1), where a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Rule 37(c)(1)(C) provides that a court "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(I)–(vi)."  One such

---

[24]*See Lund v. Unum Life Ins. of Am.*, 19 F. Supp. 2d 1254, 1259 n.3 (D. Utah 1998) (denying motion for sanctions pursuant to Rule 37(b)(2) or Rule 37(d) for failure to produce document on the ground that Plaintiff failed to first file a motion to compel as required by Rule 37(a)).

[25]Steven S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary Rule 37* (2012) (citing *Fulmore v. Home Depot, U.S.A., Inc.*, 423 F. Supp. 2d 861, 872 (S.D. Ind. 2006)).

[26]*Id.* (citing *Fulmore*, 423 F. Supp. 2d at 872).

sanction is "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."[27]

Here, the Trustee moved to exclude Dr. Lyter's report and testimony based on COP's failure to make available the original Deferral Agreement as required by Fed. R. Civ. P. 26(a)(1) and (e)(1).  Neither party disputes that the Deferral Agreement should have been disclosed pursuant to Rule 26.  COP argues that it was not disclosed because it was not within its possession.  The record in this case demonstrates, however, that when the Deferral Agreement came into COP's possession, it was not supplied to the Trustee.  Instead, COP sent the Deferral Agreement to Dr. Lyter and provided the Deferral Agreement to the Trustee as an exhibit to Dr. Lyter's report on the eve of the originally scheduled trial.

It goes without saying that Dr. Lyter's expert report was not required to be disclosed with COP's initial disclosures.  It does not follow, however, that the bankruptcy court was without power to exclude Dr. Lyter's report and testimony based on COP's failure to produce the Deferral Agreement to which the report and testimony pertained.  Given the broad discretion allowed the trial court in electing sanctions under Rule 37(c)(1), it was well within the bankruptcy court's discretion to select exclusion of the expert report as a sanction for COP's discovery violation.

The question remains under Rule 37(c)(1) whether COP's failure was "substantially justified or is harmless."  "Because the determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the [trial] court, [this Court] review[s]

---

[27]Fed. R. Civ. P. 37(b)(2)(A)(ii).

for abuse of discretion the [trial] court's decision . . . to impose a Rule 37(c)(1) sanction."[28]

Under this standard, the reviewing Court "will not reverse unless the trial court has made 'an

arbitrary, capricious, whimsical, or manifestly unreasonable judgment.'"[29]

> A [trial] court need not make explicit findings concerning the existence of a
> substantial justification or the harmlessness of a failure to disclose.  Nevertheless,
> the following factors should guide its discretion: (1) the prejudice or surprise to
> the party against whom the testimony is offered; (2) the ability of the party to cure
> the prejudice; (3) the extent to which introducing such testimony would disrupt
> the trial; and (4) the moving party's bad faith or willfulness.

In the instant case, the bankruptcy court did not make explicit findings as to substantial

justification or harmlessness.  However, the bankruptcy court did find that COP failed "to

provide discovery timely and in good faith"[30] and indicated that it had "not seen behavior like

this on the part of a creditor in some time."[31]  Both of these findings support a conclusion that

COP acted in bad faith or, at the very least, willfully in failing to timely supplement its

disclosures and provide the Deferral Amendment.  The timing and method of the provision of the

Deferral Amendment—on the eve of trial as an exhibit to an expert report regarding its

authenticity—also support a finding of prejudice and surprise that would be difficult to cure.  For

these reasons, the Court is persuaded that COP's failure was not justified or harmless.

---

[28]*Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184, 1191–92 (10th Cir. 2009) (internal quotation marks and citations omitted).

[29]*Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (quoting *FDIC v. Oldenburg,* 34 F.3d 1529, 1555 (10th Cir. 1994)).

[30]Docket No. 17 Ex. 58, at 2200.

[31]*Id*. Ex. 20, at 1059.

Therefore, based upon review of the factors provided above and the record in this case, the Court finds that the bankruptcy court did not abuse its discretion in excluding the expert report and testimony of Dr. Lyter.

2.      GOOD FAITH

COP next argues that Dr. Lyter's expert report and testimony were improperly excluded because COP participated in the discovery process in good faith and all relevant evidence was disclosed in a timely manner.  COP appears to take issue with the bankruptcy court's factual finding that COP failed "to provide discovery timely and in good faith."[32]

The Court reviews the bankruptcy court's findings of fact for clear error.[33]  "A finding is not clearly erroneous unless 'it is without factual support in the record or if, after reviewing all of the evidence, [the Court is] left with the definite and firm conviction that a mistake has been made.'"[34]  "In addition, [the Court is] required to view the evidence in the light most favorable to the [bankruptcy] court's ruling and must uphold any [bankruptcy] court finding that is permissible in light of the evidence."[35]

Here, the bankruptcy court's finding is supported by the record.  As the bankruptcy court notes elsewhere, COP provided Mr. Kimber "with numerous documents that had been requested

---

[32]*Id*. Ex. 58, at 2200.

[33]*See In re Ford*, 492 F.3d 1148, 1153 (10th Cir. 2007) (citing *Dalton v. IRS*, 77 F.3d 1297, 1302 (10th Cir. 1996)).

[34]*Id*. (quoting *Connolly v. Harris Trust Co. of Cal. (In re Miniscribe Corp.)*, 309 F.3d 1234, 1240 (10th Cir. 2002)).

[35]*Id.* at 1154 (internal quotation marks and citation omitted).

14

by the Trustee but not produced in discovery."[36]  And "[t]hose documents were attached to and formed a part of the basis for Scott Kimber's expert report."[37]  As was discussed previously, COP also failed to proved the original Deferral Agreement, springing it on the Trustee as an exhibit to Dr. Lyter's report days before trial.

COP contends that it did not fail to timely produce documents because, in response to the Trustee's request for production of documents, COP indicated that it was retaining an expert for the purpose of responding to the Trustee's discovery request and would submit a response when the expert reports were due.  The record in this case demonstrates that when Mr. Kimber's report was originally provided it was incomplete and did not contain all the schedules and documents requested.  It was only in late October, shortly before the second scheduled trial date, that the requested documents on which COP intended to rely were provided.  However, even were the Court to accept COP's assertion, the Court is not persuaded that such belated compliance would manifest clear error on the part of the bankruptcy court.

On the whole, the Court is satisfied that the bankruptcy court did not commit clear error in finding that COP failed to provide discovery timely and in good faith.

B.    DEFERRAL AMENDMENT

COP asserts that the bankruptcy court erred in finding that the Deferral Amendment was not executed until 2007 because (1) no evidence was presented at trial to support that finding and (2) the bankruptcy court violated the basic rules of contract construction.

---

[36]Docket No. 17 Ex. 26, at 1752.

[37]*Id.*

1.      LACK OF EVIDENCE

COP argues that there was no evidence, direct or circumstantial, entered at trial to support the bankruptcy court's finding that the Deferral Amendment was entered into in February 2007, and that such finding was arbitrary and pure speculation.  The Trustee contends that it presented "a mountain of compelling circumstantial evidence supporting its contention that the Deferral Amendment was a recent fabrication."[38]

This issue seeks review of a finding of fact of the bankruptcy court.  As indicated above, the Court reviews the bankruptcy court's findings of fact for clear error.[39]

At the outset, the Court would note that COP bases its argument partially on its incorrect assertion that neither party argued at trial that the Deferral Amendment was entered into in February 2007.  In closing argument at trial, the Trustee stated that "the Deferral Agreement was in fact executed, but not at the time that it indicates on the face of the document . . . but in 2007."[40]

In reaching its finding that the Deferral Amendment was entered into in February 2007, the bankruptcy court cited to both direct and circumstantial evidence.  The direct evidence that the bankruptcy court found the most credible was the September 2008 deposition testimony of Mr. Kingston.  In 2008, Mr. Kingston testified that CWM stopped making monthly payments to COP in 2007 because "[w]e made an adjustment to our agreement to allow for them to, to hold

---

[38]Docket No. 45.

[39]*See In re Ford*, 492 F.3d at 1153.

[40]Docket No. 17 Ex. 22, at 1653.

off some of the payment until after they had installed their longwall."[41]  Mr. Kingston also

testified that he believed that the 2007 agreement to defer payment "was in writing"[42] and

allowed for a deferred payment of 50%.[43]

      As COP asserts, Mr. Kingston's trial testimony directly contradicts the bankruptcy court's

finding and appears to call into question Mr. Kingston's prior deposition testimony.  Mr.

Kingston testified at trial that the Deferral Amendment was entered into in June 2000.  The

bankruptcy court found Mr. Kingston's trial testimony lacked credibility.  Under the clearly

erroneous standard, this Court "defer[s] to the trial court's assessment of the credibility of

witnesses."[44]  Thus, the Court will defer to the bankruptcy court's finding the Mr. Kingston's

trial testimony lacked credibility.

      As circumstantial support of its finding, the bankruptcy court cited the incompatibility of

the two amendments as an integrated document and the lack of support for COP's interpretation

of the Deferral Amendment in third-parties' accounting records and filings with governmental

entities.  These evidences lend support to the bankruptcy court's finding.

      In sum, the Court is persuaded that the bankruptcy court's finding that the Deferral

Amendment was entered into in February 2007 is well supported by the evidence and is not

clearly erroneous.

---

[41]*Id*. Ex. 21, at 1492–93.

[42]*Id*. at 1493.

[43]*Id*. at 1496.

[44]*In re Ford*, 492 F.3d at 1154.

2.      CONTRACT CONSTRUCTION

COP next argues that the bankruptcy court violated the basic rules of contract

construction by re-writing the unambiguous Deferral Amendment and changing its effective date.

"Interpretation of an unambiguous contract is a question of law and therefore reviewable

de novo on appeal."[45]  "The initial determination that a contract is ambiguous or not is also a

legal conclusion reviewed de novo.  If the contract is ambiguous and its construction depends on

extrinsic evidence, then the lower court's findings are reviewed for clear error."[46]  The

bankruptcy court's interpretation of the Agreement and relevant amendments is governed by state

contract law.[47]

"[A]s the Utah Supreme Court recently explained, the interpreting court must first

determine whether the contract's language is ambiguous."[48]  "A contract qualifies as ambiguous

if it lends itself to 'more than one reasonable interpretation because of uncertain meanings of

---

[45]*Vermejo Park Corp. v. Kaiser Coal Corp. (In re Kaiser Steel Corp.)*, 998 F.2d 783, 789 (10th Cir. 1993) (internal citations omitted).

[46]*In re Williams*, 183 B.R. 895, 897 (D. Kan. 1995) (internal citations omitted).

[47]*See Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 443 (5th Cir. 1994); *Okla. Plaza Investors, Ltd. v. Wal–Mart Stores, Inc. (In re Okla. Plaza Investors, Ltd.)*, 203 B.R. 479, 481 (N.D. Okla. 1994).

[48]*United States v. Dunn*, 557 F.3d 1165, 1172 (10th Cir. 2009) (quoting *Daines v. Vincent*, 190 P.3d 1269, 1275–77 (Utah 2008)); *see also Café Rio, Inc. v. Larkin-Gifford-Overton, LLC*, 207 P.3d 1235, 1240 (Utah 2009) ("Where the language within the four corners of the contract is unambiguous, the parties' intentions are determined from the plain meaning of the contractual language, and the contract may be interpreted as a matter of law.  Only if the language of the contract is ambiguous will we consider extrinsic evidence of the parties' intent." (quotations omitted)).

terms, missing terms, or other facial deficiencies.'"[49]  In addition to finding ambiguity in the

express terms of a contract, the Court may also find "ambiguity in a contract taken as a whole."[50]

> The court may consider any "relevant and credible evidence of contrary
> interpretations" in making this legal determination.  If the court concludes that
> "the interpretations contended for are reasonably supported by the language of the
> contract," the contract is ambiguous on its face.  Only then does the question of
> ambiguity become factual, requiring the court to admit parol evidence of the
> parties' intentions in order to clarify the ambiguity.[51]

Here, viewing the Agreement and relevant amendments as a whole, the Court finds that

the Deferral Amendment is facially ambiguous.  First, the lack of the handwritten "Exhibit 1" on

many of the copies of the 4% Amendment creates a facial ambiguity.  The "Exhibit 1" language

is necessary to COP's interpretation of the documents as being drafted in conjunction and

working contemporaneously to merely defer all reduced payments.  The record demonstrates that

the "Exhibit 1" language was not present in the copies of the 4% Amendment submitted to third-

parties.  Those copies of the 4% Amendment that lack the "Exhibit 1" language lend credence

and reasonable support to the Trustee's proposed interpretation of the Deferral Amendment.

Furthermore, reading the Deferral Amendment and 4% Amendment in conjunction under

COP's interpretation renders the language of the 4% Amendment reducing the royalty due on fee

coal to 4% to mere surplusage.  Under COP's interpretation of the amendments, the royalty due

on fee coal would be reduced once more by the Deferral Amendment from 4% to 2% and no fee

---

[49]*J.R. Simplot v. Chevron Pipeline Co.*, 563 F.3d 1102, 1109 (10th Cir. 2009) (quoting
*WebBank v. Am. Gen. Annuity Serv. Corp.*, 54 P.3d 1139, 1145 (Utah 2002)).

[50]*Daines*, 190 P.3d at 1277 (citing *WebBank*, 54 P.3d at 1146–47).

[51]*J.R. Simplot*, 563 F.3d at 1109 (quoting *Daines*, 190 P.3d at 1276).

coal would ever be paid out at the 4% rate.  The Court is not inclined to find a contract unambiguous where a party's interpretation does not give effect to all provisions of the contract.[52]

For these reasons, the Court finds that the Deferral Amendment is ambiguous on its face. Therefore, the bankruptcy court was correct in considering extrinsic evidence to determine the intent of the parties and clarify the ambiguity.  Further, as addressed previously, the Court is persuaded that the bankruptcy court did not commit clear error in finding that the Deferral Amendment was entered into in February 2007.

## C.    PREJUDGMENT INTEREST

COP appeals the bankruptcy court's finding that it is not entitled to interest on unpaid royalties under Utah Code Ann. § 15-1-1(2).  COP asserts that the bankruptcy court misapplied Utah law.  The Trustee contends that Utah law does not support COP's claim for prejudgment interest and, further, the bankruptcy court's finding should be affirmed on alternative grounds.

As a preliminary matter, the Court notes that the alternative grounds argued by the Trustee were not raised before the bankruptcy court.  As a general rule, a reviewing court will not consider issues that were not raised in the trial court.[53]  "This general rule applies with equal force in bankruptcy appeals."[54]  Because the Trustee had an opportunity to raise each of the

---

[52]*See Café Rio*, 207 P.3d at 1240.

[53]*In re Williams*, 49 F. App'x. 845, 849 (10th Cir. 2002) (unpublished) (citing *Walker v. Mather (In re Walker)*, 959 F.2d 894, 896 (10th Cir. 1992)).

[54]*Autos, Inc. v. Gowin*, 332 B.R. 628, 630 (D. Kan. 2005) (internal citations omitted).

alternative grounds before the bankruptcy court, the Court finds no reason to depart from the general rule in this case.

"State law governs awards of prejudgment interest in bankruptcy proceedings."[55] "Although an award of prejudgment interest is generally reviewed for abuse of discretion, 'any statutory interpretation or legal analysis underlying such an award is reviewed de novo.'"[56]

Utah's prejudgment interest rule was set out by the Utah Supreme Court over one hundred years ago in *Fell v. Union Pacific Railway Co.*[57] "In *Fell*, the Utah Supreme Court explained that 'in the class of cases where the damage is complete, and the amount of the loss is fixed as of a particular time, there is—there can be—no reason why interest should be withheld merely because the damages are unliquidated.'"[58]

> As the Utah Supreme Court recently explained: "Prejudgment interest may be recovered where the damage is complete, the amount of the loss is fixed as of a particular time, and the loss is measurable by facts and figures.  Prejudgment interest is appropriate when the loss has been fixed as of a definite time and the amount of the loss can be calculated with mathematical accuracy in accordance with well-established rules of damages.[59]

---

[55] *Universal Clearing House Co. v. Allen (In re Universal Clearing House Co.)*, 60 B.R. 985, 1002 (D. Utah 1986) (internal citations omitted).

[56] *AE, Inc. v. Goodyear Tire & Rubber Co.*, 576 F.3d 1050, 1055 (10th Cir. 2009) (quoting *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1288 (10th Cir. 2005)).

[57] 88 P. 1003, 1007 (Utah 1907).

[58] *AE, Inc.*, 576 F.3d at 1055 (quoting Fell, 88 P. at 1006).

[59] *Id.* (quoting *Encon Utah, LLC v. Fluor Ames Kraemer, LLC*, 210 P.3d 263, 272 (Utah 2009)).

This standard has generally been applied as a two prong test: (1) whether the damages are complete and (2) whether they can be measured by fixed rules of evidence and known standards of value.[60]

Here, the bankruptcy court explicitly relied on language from *Vali Convalescent & Care Institutions v. Division of Health Care Financing*[61] in denying COP's request for prejudgment interest.  The bankruptcy court cited *Vali* for the proposition that Utah Code Ann. § 15-1-1 "does nothing more than define what the rate of interest should be in those instances where interest accrues as a matter of law but no specific rate has been agreed to."[62]  The bankruptcy court also specifically rejected Schedule 2.1 of Mr. Kimber's report, which detailed the interest amounts COP sought to recover.[63]

The bankruptcy court was correct in holding that Utah Code Ann. § 15-1-1 does not provide a statutory right to recover prejudgment interest.  However, that holding does not affirmatively resolve the issue of prejudgment interest.  The award of prejudgment interest turns on the application of the rule set out in *Fell*.  As COP notes, the Court in *Vali* recognized that the law in Utah "is to allow 'interest on overdue debts even where no statute so provides.'"[64]  "Since *Fell,* the Utah Supreme Court has applied this principle and upheld or awarded prejudgment

---

[60]*Id*. (quoting *Smith v. Fairfax Realty, Inc*., 82 P.3d 1064, 1068 (Utah 2003)).

[61]797 P.2d 438 (Utah Ct. App. 1990).

[62]Docket No. 17 Ex. 26, at 1758 (quoting *Vali*, 797 P.2d at 445).

[63]*See id*. Ex. 75, at 2491.

[64]*Vali*, 797 P.2d at 445 (quoting *Bds. of Educ. v. Salt Lake Cnty. Comm'n*, 749 P.2d 1264, 1267 (Utah 1988)).

interest in a number of situations . . . [including] for unpaid royalties, assessed from the date each payment was due."[65]

The bankruptcy court failed to take into consideration the above-cited Utah law in determining whether COP is entitled to prejudgment interest.  The Court will therefore remand this matter to the bankruptcy court with instructions to determine (1) whether COP's damages are complete and (2) whether said damages can be measured by fixed rules of evidence and known standards of value.[66]  If the bankruptcy court finds an award of prejudgment interest appropriate, it should then determine the appropriate calculation of prejudgment interest, assessed from the date each payment to COP was due.

D.     CURE CLAIM ORDER

The Trustee asserts that the bankruptcy court erred in declining to strike the Cure Claim for COP's failure to comply with the Cure Claim Order.  COP contends that the striking of its claim was not warranted because: (1) it complied with the Cure Claim Order; (2) the Cure Claim Order was not a final order and, therefore, the bankruptcy court was free to interpret, apply, and amend the Cure Claim Order as it saw fit; and (3) in any event, dismissal or striking of COP's claim is not an appropriate or justified sanction.

---

[65]*AE, Inc.*, 576 F.3d at 1055–56 (citing *Trail Mountain Coal Co. v. Utah Div. of State Lands & Forestry,* 921 P.2d 1365, 1371 (Utah 1996)).

[66]*See Smith*, 82 P.3d at 1068.

1.      COMPLIANCE

The parties dispute whether COP's Cure Claim complied with the requirements of the

Cure Claim Order.  Upon review of the record below, it appears that the bankruptcy court did not

directly address this issue.

The Cure Claim Order established May 5, 2009 "as the bar date for the filing of proof of

all claims and arrearage against [CWM] arising under any executory contract or unexpired

lease."[67]  Further, it required that all cure claims set forth "each component of the calculation of

the claim amount, explaining how such component was calculated and the specific contractual

basis for it, supplying in detail all data relied upon to support the claim, and attaching all

documentation supporting each component of the claim amount."[68]  The Cure Claim Order also

provided that "Cure Claims shall be barred and disallowed if they are not filed in accordance

with the foregoing requirements."[69]

Here, it is undisputed that COP timely filed its Cure Claim.  The parties' dispute is

focused on the language requiring that each component of the calculation with supporting

documents be provided with the Cure Claim.  The Trustee argues that COP did not strictly

comply with this requirement.

The Trustee cites the following statement by the bankruptcy court for the proposition that

the bankruptcy court found that COP was not in compliance with the Cure Claim Order:

---

[67]*See* Bankruptcy Case No. 08-20105, Docket No. 570, at 1–2.

[68]*Id.* at 2.

[69]*Id.*

24

> [T]he proof of claim that's on file here isn't submitted to the Court pursuant to simply a claims bar date.  It's submitted to the Court pursuant to a pleading that specifies precisely what needs to be included in any cure claim.  So there should not have been any question what needed to be attached to the proof of claim itself.[70]

The Court is not persuaded that this statement, standing alone, constitutes a factual finding by the bankruptcy court that COP was not in compliance with the Cure Claim Order.

However, the Trustee also references various documents that COP disclosed immediately prior to trial that it asserts were explicitly and unequivocally required to be attached to its Cure Claim.  Specifically, the Trustee cites the following documents: eighty-five purported invoices numbered 22 through 106 for alleged royalties attached to Mr. Kimber's report; a ten-page "Accounts Receivable Ledger" itemizing royalty payments from 2000 to 2008; CWM's financial statements for 2006; letters from CWM reporting coal production; monthly royalty payment reports from 2003; copies of checks for payment of royalties; Quarterly Federal Excise Tax Returns; Coal Reclamation Fee Reports; and a summary of ticket sales for the first quarter of 2006.

COP contends that the above-listed documents were not necessary to calculate their Cure Claim and that they were only included with Mr. Kimber's report to provide additional credibility.  The bankruptcy court was not persuaded by this argument, finding that "[i]t is evident from the expert report of Scott Kimber that COP relied upon an accounts receivable ledger and monthly invoices from June 2000 through December 2006 to support its Cure Claim

---

[70]Docket No. 17 Ex. 20, at 1062.

and that COP failed to attach those documents to its Cure Claim."[71]  This finding is well supported by the record and, therefore, is not clearly erroneous.

Reviewing the record in this case, the findings of the bankruptcy court, and the requirements of the Cure Claim Order, the Court concludes that COP did not strictly comply with the requirements of the Cure Claim Order in that it did not supply in detail all data relied upon to support its claim and attach all documentation supporting each component of the claim amount.

2.     FINAL ORDER

The Trustee argues the Cure Claim Order was essentially a self executing final order that required automatic disallowance of nonconforming claims.  COP contends that the Cure Claim Order was merely an interlocutory order and the bankruptcy court was free to interpret, apply, and amend its interlocutory order as it saw fit.

In support of its argument, the Trustee cites *Mulvania v. United States, IRS (In re Mulvania)*.[72]  In that case, the Ninth Circuit Bankruptcy Appellate Panel held that "bankruptcy courts no longer possess an inherent ability to reconsider prior orders" and must abide by the precepts of  Fed. R. Civ. P. 60(b).[73]  In reaching that holding, the *In re Mulvania* court relied on the reasoning of *In re Met–L–Wood Corp*.  In that case, the Seventh Circuit made clear that "*final* judicial orders . . . can be set aside only under Rule 60(b)."[74]

---

[71]*Id.* Ex. 26, at 1753.

[72]214 B.R. 1 (BAP 9th Cir. 1997).

[73]*Id.* at *5 (citing *Gekas v. Pipin (In re Met–L–Wood Corp.)*, 861 F.2d 1012, 1018 (7th Cir. 1988)).

[74]*In re Met–L–Wood Corp.*, 861 F.2d at 1018 (emphasis added).

"Because bankruptcy proceedings often continue for long periods of time, and discrete claims are often resolved at various times over the course of the proceedings, the concept of finality that has developed in bankruptcy matters is more flexible than in ordinary civil litigation."[75]  "Despite this flexibility in bankruptcy cases, however, orders are appealable as final only if they 'finally dispose of discrete disputes within the larger case.'"[76]  "'The issuance of a bar date order is a largely ministerial act designed to bring to light all claims against the estate; the order resolves no claim by or against the debtor, nor does it have any direct effect on the disposition of the assets of the estate.'"[77]

Here, the Cure Claim Order does not dispose of discrete disputes within the larger case. The Cure Claim Order merely establishes a bar date for filing claims and provides instruction on properly supporting such claims.  For this reason, the Court finds that the Cure Claim Order is not a final order and is not subject to the requirements of Rule 60(b).  Therefore, the bankruptcy court was free to interpret and apply the Cure Claim Order as it saw fit.

In the event the Cure Claim Order was not final at its inception, the Trustee argues that Rule 60(b) is nevertheless applicable because the Cure Claim Order became final no later than the point when the orders from which this appeal arises became final.  This argument is

---

[75]*BancTexas Dallas, N.A. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 880 F.2d 1509, 1511 (2d Cir. 1989).

[76]*First Fid. Bank, N.A., N.J. v. Hooker Invs., Inc. (In re Hooker Invs., Inc.)*, 937 F.2d 833, 836 (2d Cir. 1991) (quoting *BancTexas Dallas, N.A.*, 880 F.2d at 1511); *see also Dimeff v. Good (In re Good)*, 281 B.R. 689, 693–94 (BAP 10th Cir. 2002) ("[A] decision is ordinarily considered final and appealable under § 158(a)(1) only if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.").

[77]*Id.* (quoting *In re Hooker Invs., Inc.*, 122 B.R. 659, 662 (S.D. N.Y. 1991)).

unavailing.  The bankruptcy court's interpretation and application of its prior interlocutory order occurred prior to the final orders being entered in this case.  Prior to a final order being entered, the bankruptcy court was free to interpret and apply its prior order.

3.   SANCTION

Finally, the Court is not persuaded that the phrase "Cure Claims shall be barred and disallowed if they are not filed in accordance with the foregoing requirements" necessitates disallowance of the Cure Claim.  The Court recognizes that bar date orders—such as the Cure Claim Order—act as a statute of limitations, and that courts routinely strike claims that are not filed within the limitations set.[78]  However, failure to file within the limitations of a bar date order does not necessitate disallowance of a claim in every case.[79]  Similarly, the Court is not persuaded that failure to include every calculation and document to a bar date order necessitates disallowance of a claim.  For this reason, the Court finds that the bankruptcy court did not err in declining to strike COP' Cure Claim.

E.   MR. KIMBER'S REPORT

The Trustee asserts that the bankruptcy court abused its discretion in failing to exclude Mr. Kimber's expert report because COP failed to disclose or produce numerous documents attached to the report and failed to serve a complete copy of the report within the time limitations set by the bankruptcy court.  COP contends that the documents not previously disclosed were

---

[78]*See Yukon Self Storage Fund v. Green (In re Green)*, 876 F.2d 854, 856–57 (10th Cir. 1989).

[79]*See Rowe Int'l Inc. v. Herd (In re Herd)*, 840 F.2d 757, 758–59 (10th Cir. 1988).

included with Mr. Kimber's report merely as rebuttal evidence to refute the Trustee's allegations of fabrication and bad faith.  Further, COP argues that it was well within the bankruptcy court's discretion to impose monetary sanctions rather than striking Mr. Kimber's report.

The parties dispute whether COP complied with the disclosure requirements of Fed. R. Civ. P. 26(a).  In its Order on Trustee's Motion in Limine and Motion for Sanctions, the bankruptcy court specifically found that "COP failed to produce numerous other documents requested by the Trustee in discovery . . . [and] that COP substantially failed to comply with its disclosure obligations under Fed. R. Civ. 26(a)."[80]  The "other documents" language of the bankruptcy court's order is clarified by the court's finding, immediately prior to trial, that COP failed "to provide the documentation that's [sic] supports the Kimber report."[81]  Indeed, it was "because of the manner in which [the Kimber report] was produced, and the delays in providing a complete report to Counsel" that the bankruptcy court awarded "sanctions in favor of the Trustee for the fees that the estate . . . incurred in drafting the motion in limine."[82]

Thus, because the bankruptcy court found that COP failed to comply with its disclosure obligations under Fed. R. Civ. 26(a), the only remaining issue before the Court is whether, due to this failure, Mr. Kimber's report must be excluded under Rule 37(c)(1).

As discussed previously, Rule 37(c)(1) provides that where a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use

---

[80]Docket No. 17 Ex. 31, at 2.

[81]*Id*. Ex. 20, at 1063.

[82]*Id*. at 1062.

29

that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the

failure was substantially justified or is harmless."  Rule 37(c)(1) goes on to provide, however,

that

> [i]n addition to or instead of this sanction, the court, on motion and after giving an
> opportunity to be heard:
> (A) may order payment of the reasonable expenses, including attorney's fees,
> caused by the failure;
> (B) may inform the jury of the party's failure; and
> (C) may impose other appropriate sanctions, including any of the orders listed in
> Rule 37(b)(2)(A)(i)-(vi).

Here, neither party appears to argue that COP's failure to disclose was substantially

justified or harmless.  And, in any event, such an argument would likely fail as the bankruptcy

court explicitly found that COP's failure in these respects was not excusable and was "prejudicial

to the Trustee's trial preparation."[83]  Rather, the parties' dispute centers on whether, after finding

that Mr. Kimber's report failed to comply with the requirements Rule 26, the bankruptcy court

abused its discretion by allowing the admission of the expert report and imposing alternative

sanctions.

The sanctions available under Rule 37(c)(1) are often described as "self executing" and

"automatic."[84]  Indeed, some courts have cited the language of Rule 37(c)(1) as requiring

mandatory exclusion of evidence not disclosed as required under Rule 26(a).[85]  However, in

---

[83]Docket No. 17 Ex. 31, at 2.

[84]Steven S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary Rule 37*
(2012) (citing *Fulmore*, 423 F. Supp. 2d at 872).

[85]*See Kern River Gas Transmission Co. v. 6.17 Acres of Land, More or Less, in Salt Lake
County, Utah*, 156 F. App'x 96, 102 (10th Cir. 2005) (unpublished) ("Again, 'a party that
without substantial justification fails to disclose information required by Rule 26(a) is not, unless

addressing Rule 37 generally, the Tenth Circuit has made clear that "[t]he protections and sanctions found in the discovery rules are not absolute and contemplate the use of judicial discretion."[86]  This discretion has led trial courts, in similar circumstances, to impose alternative sanctions as opposed to exclusion.[87]

A recent case from this Court, *International Automated Systems, Inc. v. IBM*,[88] is particularly on point.  In that case, the court determined that one of the parties failed to disclose information in violation of Rule 26(a) and, because the "failure to do so was neither justified nor harmless," it had discretion under Rule 37(c)(1) to "prohibit any use of the untimely disclosed information."[89]  Nevertheless, the court found that the appropriate sanction was to allow "the

such failure is harmless, permitted to use as evidence at trial . . . any witness or information not so disclosed.'") (quoting Fed. R. Civ. P. 37(c)(1)).

[86]*Marshall v. Ford Motor Co.*, 446 F.2d 712, 713 (10th Cir. 1971) (internal citations omitted).

[87]*See Network Computing Servs. Corp. v. Cisco Sys., Inc.*, 223 F.R.D. 392, 399–400 (D. S.C. 2004) ("[T]he sanctions enumerated by Rule 37 are not exclusive, but flexible, and 'may be applied in as many or varied forms as the court desires by exercising discretion in light of the facts of each case.'") (quoting *Guidry v. Cont'l Oil Co.*, 640 F.2d 523, 533 (5th Cir. 1981); *Biltrite Corp. v. World Rd. Markings, Inc.*, 202 F.R.D. 359 (D. Mass. 2001) (failure of a corporate defendant's principal to disclose his true identity and home address in initial disclosures and a sworn statement, without substantial justification, warranted sanctions in the form of allowing plaintiff to introduce evidence of the false initial disclosures and sworn statement at trial, and requiring the corporation and the principal to pay $5,000 into the registry of the court, and to pay the reasonable costs, including attorney fees, incurred by plaintiff as a result).

[88]595 F. Supp. 2d 1197 (D. Utah 2009).

[89]*Id*. at 1213.

31

information to be used by the offending party while requiring the offender to pay 'reasonable expenses, including attorney's fees, caused by the failure.'"[90]

The facts of the instant appeal are substantially similar to the facts of *International Automated Systems*.  The Trustee asserts that the bankruptcy court abused its discretion because it awarded attorney's fees in lieu of excluding Mr. Kimber's report after finding that the report and its attachments were submitted in violation of Rule 26(a) and that such submission was not substantially justified or harmless.

The Court will follow the precedent set out in *International Automated Systems* and find that the bankruptcy court acted within its discretion in applying monetary sanctions in lieu of exclusion, even where the non-disclosure was not justified or harmless.  In light of this holding, the Court finds that the bankruptcy court did not abuse its discretion in declining to exclude Mr. Kimber's report.

F.    ATTORNEY FEES

The Trustee asserts that the bankruptcy court abused its discretion in reducing the amount of attorney fees and costs the Trustee could be awarded based on the bankruptcy court's erroneous view of Rule 37(b)(2)(C) and failure to grasp the totality of the circumstances in making a fact specific inquiry to determine the correct sanction.

---

[90] *Id*. (quoting Fed. R. Civ. P. 37(c)(1)).

32

This Court reviews the imposition of sanctions for abuse of discretion.[91]  "In determining whether the [trial] court abused its discretion, we do not reweigh the evidence, but determine only whether that court's decision was based on an erroneous view of the law or a clearly erroneous assessment of the evidence."[92]

Here, the bankruptcy court "considered the totality of the circumstances in this case" prior to entering its attorney fees award of $12,311.50.  In light of the standard set out above, the Court will not re-weigh the evidence relied on by the bankruptcy court.  Further, the Court is not persuaded that the bankruptcy court's review of the facts was clearly erroneous.  This issue turns then on whether the bankruptcy court reached its Memorandum Opinion Regarding Sanctions based on an erroneous view of the law.

In its Memorandum Opinion, the bankruptcy court recognized that "[a] court always has discretion to sanction a party for failure to comply with federal procedural rules."[93]  However, the bankruptcy court went on to hold that its discretion was limited by the requirements of Fed. R. Civ. P. 37(b)(2).  Namely, that any sanction must be "just," and that "'the sanction must

---

[91]*See Beverage v. Shelter Mut. Ins. Co.*, 129 F.3d 130 (10th Cir. 1997) (unpublished) (citing *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994)).

[92]*Ltd. Gaming of Am., Inc. v. Doran, Walters, Rost, Selter & Wolfe*, 232 F.3d 901 (10th Cir. 2000) (citing *FDIC v. United Pac. Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir. 1998); *Barrett v. Tallon*, 30 F.3d 1296, 1302 (10th Cir. 1994)).

[93]Docket No. 17 Ex. 66, at 2240 (citing *AdvantEdge Bus. Grp. v. Mestmaker & Assocs., Inc.*, 552 F.3d 1233 (10th Cir. 2009)).

specifically relate to the particular claim which was at issue in the order to provide discovery.'"[94]
Based on this second requirement, the bankruptcy court held that its

> discretion is limited to awarding sanctions that are specifically related to the
> "claim" which in this case was COP's failure to provide discovery timely and in
> good faith, the Trustee may only be awarded its attorney fees and costs that were
> 'caused' by COP's failure to provide the discovery timely and in good faith.[95]

In reaching this holding, the bankruptcy court erroneously limited its discretion to award

sanctions.  In the case of *In re Courtesy Inns, Ltd., Inc.*,[96] the Tenth Circuit made clear that 11

U.S.C. § 105(a) "intended to imbue the bankruptcy courts with the inherent power recognized by

the Supreme Court in *Chambers*."[97]  Thus, the bankruptcy court has the inherent "power to

maintain order and confine improper behavior in its own proceedings."[98]  In *Chambers v. Nasco*,

the Supreme Court

> recognized the inherent power of a federal district court to sanction conduct
> abusive of the judicial process.  The Supreme Court rejected arguments that
> specific federal statutes and the various sanctioning provisions of the federal rules
> reflect legislative intent to displace the court's inherent powers.  It held that when
> there is bad-faith conduct in the course of litigation that could be adequately
> sanctioned under the Rules, the court ordinarily should rely on the Rules rather
> than the inherent power.  But if in the informed discretion of the court, neither the

---

[94]*Id*. (quoting *Ins. Corp. of Ireland, LTD. v. Compagnie des Bauxites de Guinee*, 456 U.S.
694, 707 (1982)).

[95]*Id*. at 2241.

[96]40 F.3d 1084 (10th Cir. 1994).

[97]*Id*. at 1089 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).

[98]*Id*.

34

statute nor the Rules are up to the task, the court may safely rely on its inherent power.[99]

Viewing the Memorandum Opinion Regarding Sanctions in conjunction with the bankruptcy court's prior orders granting sanctions, the Court finds that the bankruptcy court erroneously limited its discretion to award sanctions.

Because the Court finds that the bankruptcy court erroneously limited its discretion to award sanctions, the Court concludes that the bankruptcy court abused its discretion in reducing the Trustee's attorney fees. The Court will therefore remand this issue to the bankruptcy court for reconsideration of the proper award of attorney fees and expenses.

## V.  CONCLUSION

Based on the foregoing, it is hereby

ORDERED that the judgment of the bankruptcy court is AFFIRMED except as to its determination of prejudgment interest and sanctions. The case is REMANDED for further proceedings before the bankruptcy court, pursuant to the terms of this Order.

DATED   January 28, 2013.

BY THE COURT:

_____

TED STEWART
United States District Judge

---

[99]*Id.* (citing *Chambers*, 501 U.S. at 50).

35